## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**FIRST STATE BANK,**

        **Plaintiff,**

        **v.**                             **Case No.  05-2505-JWL**

**DANIEL AND ASSOCIATES, P.C.**
**d/b/a DANIEL, SCHELL, WOLFE**
**AND ASSOCIATES, P.C.,**

        **Defendant.**
_____

## MEMORANDUM AND ORDER

In this lawsuit plaintiff First State Bank alleges that defendant Daniel and Associates, P.C. d/b/a Daniel, Schell, Wolfe and Associates, P.C. (Daniel & Associates) engaged in accounting malpractice in performing accounting and auditing work for non-party Law Enforcement Equipment Company (LEECO).  The bank alleges that it relied on audit reports and financial statements prepared by Daniel & Associates in connection with extending credit to LEECO.  This matter is currently before the court on Daniel & Associates' Motion for Summary Judgment (doc. #60).  For the reasons explained below, Daniel & Associates' motion is granted on the grounds that the bank's claim is barred by the statute of limitations.

## STATEMENT OF MATERIAL FACTS[1]

_____

[1] Consistent with the well established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable

Daniel & Associates provided professional accounting services to LEECO for the years 1998, 1999, 2000, and 2001.  In December of 2001, First State Bank extended a revolving line of credit to LEECO.  The bank alleges that in extending credit to LEECO it relied upon the audit reports and financial statements for the years 1997, 1998, 1999, 2000, and 2001 which were prepared by Daniel & Associates, and the bank further alleges that Daniel & Associates committed accounting errors in connection with the 2000 and 2001 audit reports and financial statements.  The bank extended a revolving line of credit to LEECO in December of 2001.  At that time, the bank had the audit report and financial statement for the year 2000 but it did not yet have the December 31, 2001, audit report and financial statement.

Dave Herndon is the President and CEO of the bank.  He was also the loan officer for the LEECO loan.  He testified in his deposition that the bank received LEECO's 2001 financial statement in May of 2002.  Shortly thereafter, LEECO's owner, Kevin Hatfield, expressed his displeasure about Daniel & Associates' delinquency in preparing the reports and he began interviewing other accountants.  The accounting firm of Baird, Kurtz & Dobson (BKD) then began performing LEECO's financial work.  It was at that time, which was sometime between May and July of 2002, that the bank became suspicious of the LEECO audit reports and financial statements prepared by Daniel & Associates.  On or about August 31, 2002, the bank became aware of Daniel & Associates' alleged failure to disclose

---

to First State Bank, the nonmoving party.

LEECO's violation of loan covenants in its 2000 and 2001 audit reports and financial statements.

Late in the third quarter or fourth quarter of 2002, the bank became concerned about the repayment of the revolving line of credit it had extended to LEECO and it moved LEECO's revolving line of credit from a "pass credit" to a "work-out" mode. "Work-out" mode occurs when a loan has an identified weakness (i.e., anything that would put the repayment of principal and interest under the terms and conditions contracted for at risk, or at a higher level of risk) that is getting more than the normal level of servicing and attention, and is not a "good thing." According to Mr. Herndon, although the LEECO loan was subject to greater supervision by the bank beginning sometime in 2002, it is not uncommon for the bank to obtain full recovery on loans under the type of supervision the LEECO loan was under. In fact, until early 2005, the bank believed that it would obtain full payment of all monies it was owed by LEECO.

A commercial loan presentation by the bank for LEECO dated December 12, 2002, stated "[a]ccounting errors/omissions discovered (and believed corrected)." These errors and omissions included Daniel & Associates' alleged accounting errors. The presentation stated that Daniel & Associates had been slow in producing the 2001 audit report, that Mr. Hatfield was "displeased with the service provided by" Daniel & Associates, and that he ultimately hired another firm to assume the 2002 audit. Additionally, the commercial loan presentation stated as follows: "BKD advises the application of purchase accounting is the appropriate presentation and the 12/31/01 audit report from Daniel, Shell & Wolfe is incorrect. Hatfield

may have some recourse to the seller &/or the previous accountants and intends to seek his attorney's opinion."   Mr. Hatfield reassured the bank that the changes to the financial statements made by BKD that replaced Daniel & Associates did "not represent a real cash loss" by LEECO.

Prior to January of 2005, LEECO continued to make regular monthly payments on its loan with the bank.  In January of 2005, Mr. Hatfield informed Mr. Herndon that LEECO was no longer going to pay on its loan and that it wanted to proceed with a voluntary liquidation of the company.  Up until that time, FSB believed that LEECO would continue to operate and continue to make regular loan payments as it had done from the inception of the loan.  Mr. Herndon testified in his deposition as follows:

> Q.   [Was LEECO] meeting [its] obligations, [its] bank obligations as due up to December 12th of 2002?
>
> A.   Yes.
>
> Q.   At what point in time did [LEECO] stop meeting [its] monthly obligations?
>
> A.   Not until January of '05.
>
> Q.   What happened in January of '05?
>
> A.   Right after the New Year's, Kevin Hatfield called and asked if he could come over immediately to my office and meet with me.
>       I could tell by the tone of his voice that he was not bringing me "Happy New Year" wishes.  He walked in, he took the keys to his office, and he slid them across my desk, and he asked me, he said, "Please don't make me go back.  I can't do this any more."
>       That was the first I knew that we had a problem.  We had a company that had money in their bank account.  We had a current loan. He just couldn't do this any more.

4

> I told him at that time that I could not liquidate the company, I could not take over the company, that it was still his responsibility and obligation, and that it would take a joint effort to liquidate that.
>
> That week, which was the first week of January, as I recall, that week he came up with a voluntary liquidation plan. We sent out or he sent out over LEECO's letterhead instructions to all of his accounts receivable to remit to us, and the liquidation was underway.

Based on these facts, the bank asserts a claim against Daniel & Associates for accounting malpractice. Daniel & Associates now seeks summary judgment on the grounds that the two-year statute of limitations for an accounting malpractice claim expired before plaintiff filed this lawsuit on October 20, 2005.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.

---

[2] Daniel & Associates also contends that the bank lacks standing to bring this lawsuit because of the liability restrictions for accountants set forth in K.S.A. § 1-402. This statute, however, unambiguously applies only to a person, proprietorship, partnership, or registered firm "authorized to practice as a certified public accountant pursuant to article 3 of chapter 1 of the Kansas Statutes Annotated." § 1-402. It is undisputed that Daniel & Associates is not and has never been registered with the Kansas Board of Accountancy. Consequently, Daniel & Associates is not entitled to the benefit of the liability restrictions set forth in § 1-402. If the bank's claim were not barred by the statute of limitations, the common law rules of liability would apply to the bank's claim against Daniel & Associates. *Id.* § 1-403 ("The provisions of this act are not intended to alter or modify existing common law rules of liability except as otherwise stated herein.").

*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from

6

which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218

F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this,

the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific

exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural

shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and

inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ.

P. 1).

## ANALYSIS

The parties agree that the applicable statute of limitations for the bank's accounting

malpractice claim is two years, as set forth in K.S.A. § 60-513(a)(4). *See Brueck v. Krings*,

230 Kan. 466, 469-70, 638 P.2d 904, 907 (1982) (two-year statute of limitations applies to

accounting malpractice claim). Under the statute, a cause of action accrues when "the act

giving rise to the cause of action first causes substantial injury, or . . . [when] the fact of

injury becomes reasonably ascertainable to the injured party . . . ." K.S.A. § 60-513(b). The

statute of limitations begins to run in a tort action at the time a negligent act causes injury if

both the act and the resulting injury are reasonably ascertainable by the injured person.

*Moon v. City of Lawrence*, 267 Kan. 720, 727, 982 P.2d 388, 394 (1999). If the fact of injury

is not reasonably ascertainable until some time after the initial act, then the limitations period

begins when the fact of injury becomes reasonably ascertainable to the injured party. *Isnard*

*v. City of Coffeyville*, 260 Kan. 2, 5, 917 P.2d 882, 885 (1996). The term "substantial injury" means that "the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent." *Moon*, 267 Kan. at 728, 982 P.2d at 395 (quotation omitted). "The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his [or her] action to a successful conclusion." *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 116, 936 P.2d 714, 719 (1997) (quotation omitted). When the evidence is disputed as to when substantial injury results or when it becomes reasonably ascertainable, this is for determination by the trier of fact. *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 311, 820 P.2d 390, 394 (1991).

This action was commenced on October 20, 2005. Two years prior would have been October 20, 2003. Daniel & Associates contends that the statute of limitations expired before 2005 because in 2002 the bank was aware of the alleged accounting errors, it had already begun having concerns about repayment of LEECO's loan, and it had placed the loan in work-out mode under which it was receiving a greater level of supervision. The bank, on the other hand, contends that it did not suffer any injury until LEECO stopped making its monthly payments in 2005. The bank points out that Mr. Herndon testified in his deposition that it was not uncommon for the bank to obtain full recovery on loans under this level of supervision and that at this point in time he believed the bank would obtain full payment of all monies it was owed by LEECO. Additionally, although the bank was aware of the alleged accounting errors and omissions, it believed those had been corrected and Mr. Hatfield had

8

reassured the bank that the changes to the financial statements did not represent a real cash loss by LEECO.  LEECO had been making its monthly payments through January of 2005.  When Mr. Hatfield visited Mr. Herndon in January of 2005 that was the first Mr. Herndon knew that the bank "had a problem" with LEECO's repayment.  At that time, LEECO had money in its bank account and its loan was current.

The bank's contention that the statute of limitations did not begin to run until the event of non-payment by the debtor might have some force if this were a collection case where the bank was alleging mere non-payment of a loan by a debtor.  But, instead, in this case the bank is alleging that the loan itself was improper because the bank made the loan based upon erroneous audit reports and financial statements.  As such, the weight of authority holds that the bank suffered legal injury sufficient to trigger the running of the statute of limitations at the time it made the loan.  *See Corsicana Nat'l Bank v. Johnson*, 251 U.S. 68, 86 (1919); *Farmers & Merchants Nat'l Bank v. Bryan*, 902 F.2d 1520, 1522 (10th Cir. 1990) ("In general, a cause of action on an improper loan accrues at the time the loan is made."); *see also FDIC v. Jackson*, 133 F.3d 694, 696-97 (cause of action for negligence accrues at the time of the approval of bad loans) & n.2 (collecting cases on this issue) (9th Cir. 1998); *Fed. Sav. & Loan Ins. Corp. v. Haralson*, 813 F.2d 370, 377 (11th Cir. 1987) (lender suffered legal injury which began the running of the statute of limitations by virtue of misrepresentation in financial statement when lender was induced to make loan on the basis of that financial statement).  Consequently, the bank suffered legal injury when it made the

9

allegedly improper loan in December of 2001 based on erroneous audit reports and financial statements.

Neither party suggests that the injury was reasonably ascertainable by the bank at that time. Thus, the limitations period began to run when the fact of injury was reasonably ascertainable to the bank. *See Isnard*, 260 Kan. at 5, 917 P.2d at 885. Clearly, the bank's injury was reasonably ascertainable before October 20, 2003. The uncontroverted summary judgment record reflects that in 2002 the bank already knew about the alleged accounting errors, it had already begun having concerns about repayment of LEECO's loan, and it had placed the loan in work-out mode under which it was receiving a greater level of supervision. The fact that the bank may not have been aware of the extent of the injury at that time because LEECO had not yet failed to make a payment is immaterial. The Kansas Supreme Court rejected a similar argument in *Brueck v. Krings*. In *Brueck*, the plaintiffs contended that the fact of injury on an accounting malpractice claim was not reasonably ascertainable until the collapsed savings and loan association closed its doors on August 1, 1977. *Id.* at 470, 638 P.2d at 908. The Supreme Court rejected this argument, explaining that "[t]he critical information to trigger the running of the statute of limitations is knowledge of the fact of injury, not the extent of injury." *Id.* at 470-71, 638 P.2d at 908 (finding the limitations had run where more than two years prior considerable press had been given to the fact that the savings and loan association showed signs of faltering or having financial difficulty and had been placed under the jurisdiction of a trustee). Likewise, here, the bank was aware that it had made the loan to LEECO based on allegedly erroneous audit reports and financial

10

statements in 2002, which was more than two years prior to its commencement of this lawsuit on October 20, 2005.  Accordingly, its claim against Daniel & Associates is barred by the statute of limitations.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Daniel & Associates' Motion for Summary Judgment (doc. #60) is granted on the grounds that the bank's claim is barred by the applicable two-year statute of limitations.

**IT IS SO ORDERED** this 20th  day of March, 2006.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge